CITY OF ELIZABETH, APPELLANT, v. BOARD OF PUBLIC
UTILITY COMMISSIONERS, ELIZABETHTOWN WATER
COMPANY ET AL., RESPONDENTS.

Argued November 21, 1923—Decided January 18, 1924.

On appeal from the Supreme Court, in which the follow-
ing *per curiam* was filed:

"The writ of *certiorari* in this case brings up for review an
order made by the board of public utility commissioners in-
creasing the rates permitted to be charged by the Elizabeth-
town Water Company for water service. The prosecutor is
the city of Elizabeth.

"The Elizabethtown Water Company was created by a
special act of the legislature in 1854, for the purpose of serv-
ing with water the city of Elizabeth and adjacent commu-
nities. The territory rapidly developed and the company
was obliged to secure water from numerous sources other
than the Elizabeth river, which was its original source of
supply. The character of the service rendered by the com-
pany was, prior to this proceeding, a matter which came
before the board of public utility commissioners. On June
8th, 1920, the board made an order requiring the installa-
tion of meters and other equipment which called for a large
investment of additional capital.. No increase in rates was
allowed the company at this time. This order was set aside
on June 7th, 1921, by the Supreme Court as unreasonable,
which held that the company could not be required "to make
bricks without straw." After this decision the company
made application for an increase of rates. The schedule
suggested by the company was not adopted. The board made
a new schedule. The burden of showing that this schedule
is not just and reasonable is upon the prosecutor, in view of
the fact that it is not a schedule prescribed by the company.

"The first point argued by the prosecutor is that the board
took into consideration, in its decision, evidence which was

not a part of the record. It appears from the report that the engineers of the board checked the inventory, and the appraisal was subjected to a careful analysis by a study of the unit prices and a comparison of the prices used with similar figures used by the board in other appraisal work. The prosectuor contends that the work of the engineers of the board and the board's comparison was not enmbodied in the record, and hence a result was arrived at and decision made outside of the record, which constitutes error. We think the board was within its powers in using the knowledge which it had obtained in other proceedings of unit prices and in using its engineers to check the inventory. It would be almost impossible for any board not to use the knowledge which it has obtained in other proceedings in weighing the evidence in the case which it has under consideration, and to mould the form of its schedule along the lines of those schedules which had been tested in the courts and approved. The burden is on the prosecutor to show in what respect the order impairs its substantial right. The Public Utility act provides that 'no order shall be set aside, in whole or in part, for any irregularity or informality in the proceedings of said board, unless such irregularity or informality tends to defeat or impair the substantial right or interest of the prosecutor in *certiorari*.' We feel that the prosecutor, in this respect, has not sustained the burden the statute imposes.

"The prosecutor next contends that the company is not entitled to an advance in rates until it is rendering proper and adequate service to the public; that by reason of the company's failure to comply with the orders of the board for the improvements of its service, it was not in a position to ask for relief. The prosecutor desires to have applied the maxim of equity that one who comes into a court of equity must come in with clean hands. In other words, that no relief is to be offered a utility if that utility is not rendering adequate and proper service, even though the failure to render such service is due to a deficient return upon the actual capital invested and an inability to attract capital to the enterprise by reason of such return, rather than to an arbi-

trary refusal to improve the service when the company has at its command sufficient funds for that purpose. In the present case if this doctrine was applicable, because of the company's failure to obey the order of June 8th, 1920, it could not be applied, in view of the fact that this court held that the company was under no obligation to make the improvements ordered in view of the financial inability of the company to make them. If other defects of service be relied on by the prosecutor, we are of the opinion that such defects of service arose from insufficient rates, and should not prevent the increase of rates granted by the board. The policy of the law is, and should be, to aid utilities to properly function, and to render adequate service to the public by permitting rates to be charged for the service rendered which will yield an adequate return upon the capital invested, maintain the property and attract capital. The policy should never be one of destruction. *O'Brien* v. *Public Utility Board,* 92 *N. J. L.* 44. A starved utility is in no better position to render proper service than a starved horse or a motor car without fuel. We think the evidence amply justified the increase in rates granted.

"The prosecutor also attacks the rate base in several particulars, contending that the board in its valuation took into consideration matters which should not have been included, and also erred in fixing too high allowances for overhead, &c. There was evidence which justified the results arrived at by the board and they will not be disturbed, in view of the fact that there is evidence which will support the finding of the board.

"We find that the board did not value the easements as if owned in fee, but valued them as easements. We approve the inclusion of the entire valuation of the thirty-six-inch main, assuming, for the time being, it is larger than is now required. It was constructed according to dimensions approved by a competent engineer. If it was mistakenly constructed too large, which we do not think, a utility should not be punished for a mistake of judgment in such a case any more than a physician should be prevented from charg-

ing his fee in a case where he may have made a mistake in his diagnosis. This case is different from that of the *Tintern Manor Water Co., 71 N. J. Eq.* 790, where the entire plant was constructed to furnish a supply of water grossly in excess of reasonable requirements.

"We find nothing unreasonable in the apportionment of the cost of fire service. It was made according to principles established and approved.

"The writ is dismissed and the order of the board affirmed."

For the appellant, *Joseph T. Hague* and *Frank H. Sommer.*

For the respondent Board of Public Utility Commissioners, *Thomas Brown.*

For the respondent Elizabethtown Water Company, *Collins & Corbin, Clement K. Corbin* and *William M. Wherry, Jr.* (of the New York bar).

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, CLARK, JJ. 10.

*For reversal*—None.